UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DARIO ZUTEL and IRINA ORECHKINA,

                Plaintiffs,            **MEMORANDUM & ORDER**
                                                  12-CV-3656 (RRM) (VMS)

   - against -

WELLS FARGO BANK, N.A., and U.S.
BANK, NATIONAL ASSOCIATION, as
Trustee for Banc of America Funding
Corporation Mortgage Pass-Through
Certificates, Series 2006-G,

                Defendants.
----------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiffs Dario Zutel and Irina Orechkina commenced this action on July 23, 2012, against Wells Fargo Bank, N.A. ("Wells Fargo"). (*See* Compl. (Doc. No. 1).) On January 9, 2013, plaintiffs filed an amended complaint also naming as defendants U.S. Bank, National Association (the "Trustee"), as Trustee for Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-G (the "Trust").[1] (*See* Am. Compl. (Doc. No. 13).) Plaintiffs seek to quiet title to their residence, and they allege fraud and unjust enrichment in connection with the mortgage on their property. (*See generally id.*)

      Now before the Court is a motion to dismiss for failure to state a claim filed by Wells Fargo pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Doc. No. 28.) For the reasons that follow, the motion is granted, and this action is dismissed.

---

[1] The Trustee has not appeared in this action. Despite plaintiffs' annexed affidavit of service, (*see* Decl. of Brian S. McGrath ("McGrath Decl."), Ex. C (Doc. No. 28-5)), Wells Fargo asserts that plaintiffs "do not appear to have properly served the Trust." (Def.'s Mem. of L. ("Def.'s Mem.") (Doc. No. 28-1) at 6 n.1.) The dispute is immaterial, however, as the analysis that follows applies regardless of the party against which plaintiffs' claims are asserted.

# BACKGROUND[2]

On or about August 15, 2005, plaintiffs executed a $472,000 mortgage agreement with Cambridge Home Capital, LLC. (Am. Compl. ¶ 6.) Later that same day, the mortgage was assigned to Wells Fargo. (*Id.* ¶ 7; *see also* Decl. of David M. Schlachter ("Schlachter Decl."), Ex C. (the "Assignment Agreement") (Doc. No. 28-12).) This Assignment Agreement was executed by Seth Kramer, the President of Cambridge Home Capital.[3] (Am. Compl. ¶ 6.) Despite the assignment, however, the original mortgage note was neither delivered nor indorsed to Wells Fargo.[4] (*Id.* ¶ 10.) Plaintiffs thus claim that the assignment of their mortgage and promissory note to Wells Fargo is invalid.

Moreover, at some point subsequent to the assignment, plaintiffs sought to research the validity of their mortgage debt obligations after receiving notices of changes in their mortgage servicer. (*Id.* ¶ 15.) Between 2010 and 2012, pursuant to the Real Estate Settlement Procedures Act ("RESPA"), plaintiffs filed a series of three Qualified Written Requests ("QWRs") with

---

[2] At this stage, the Court's review is limited to the facts alleged or incorporated by reference in the amended complaint, documents attached to the amended complaint, and matters of which the Court may take judicial notice. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Diamond v. Local 807 Labor-Mgmt. Pension Fund,* No. 12-CV-5559 (RRM) (VVP), 2014 WL 527898, at *1 n.1 (E.D.N.Y. Feb. 7, 2014). The Court assumes the truth of the facts alleged, and draws all reasonable inferences in plaintiffs' favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The Court is not, however, "bound to accept as true a[ny] legal conclusion couched as a factual allegation." *Sharkey v. Quarantillo*, 541 F.3d 75, 82–83 (2d Cir. 2008) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Williams ex rel. United Guardianship Servs. v. Shah*, No. 12-CV-3953 (RRM) (RML), 2014 WL 1311154 at *1 n.1 (E.D.N.Y. Mar. 30, 2014).

[3] Plaintiffs allege all of the handwritten entries on the Assignment – including the "Notary's Acknowledgment" – appear to be in Kramer's handwriting. (Am. Compl. ¶ 9.) They do not, however, dispute the validity of his signature or the notarization. Plaintiffs also allege that Cambridge Home Capital settled civil mortgage fraud claims with the United States Attorney's Office for the Southern District of New York in December 2011, (*id.* ¶ 12), and that, upon information and belief, Kramer admitted to submitting fraudulent documents to the Department of Housing and Urban Development ("HUD") and was barred from all HUD programs as a result of that settlement. (*Id.* ¶¶ 13–14.)

[4] This is relevant because, "[i]n a mortgage foreclosure action, a plaintiff has standing where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced." *Bank of New York v. Silverberg*, 926 N.Y.S.2d 532, 537 (N.Y. App. Div. 2011).

Wells Fargo, which purported to be the servicer of their mortgage loan.[5] (*Id*. ¶ 16.) Plaintiffs claim that Wells Fargo's responses to these QWRs contained fraudulent misrepresentations.

In particular, in its first response dated December 27, 2010, Wells Fargo stated that the investor in plaintiffs' mortgage was Bank of America. (*Id*. ¶ 18.) Plaintiffs allege, however, that there is no publicly-recorded assignment of the mortgage to Bank of America, and that a copy of the original promissory note – included by Wells Fargo with its QWR response – contains no indorsement to Bank of America, any other party, or in blank.[6] (*Id*. ¶¶ 19–20.) According to plaintiffs, Wells Fargo's representation was designed to induce plaintiffs to believe that Bank of America owned their loan. (*Id*. ¶ 21.) Relying on Wells Fargo's QWR response, plaintiffs continued to make payments on their mortgage to Bank of America – an allegedly "fraudulent party." (*Id*. ¶ 22.)

In a second QWR response dated April 8, 2011, Wells Fargo did not state the identity of the investor in plaintiffs' mortgage, allegedly "continuing the ongoing fraud begun in the [first] QWR response." (*Id*. ¶ 23.) And in a third response dated March 1, 2012, Wells Fargo again allegedly continued the fraud by stating:

> There is no one particular investor on the loan; this loan has a group of investors; which is managed by a Trustee. The Trustee for the loan is U.S. Bank, N.A. and their address is: U.S. Bank N.A.[,] 209 S. LaSalle Street, 3rd Floor, Suite 300[,] Chicago, IL 60604-1219.

---

[5] "The purpose of RESPA is to 'insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.'" *Kapsis v. Am. Home Mortgage Servicing Inc.*, 923 F. Supp. 2d 430, 444 (E.D.N.Y. 2013) (quoting 12 U.S.C. § 2601(a)). The statute defines a QWR, *see* 12 U.S.C. § 2605(e)(1)(B), and mandates that the servicer of a "federally related mortgage loan" take certain actions and provide certain written responses within specified periods of time after receiving a QWR from a borrower. *See id.* § 2605(e)(2); *see also Kapsis*, 923 F. Supp. 2d at 444.

[6] Under New York law, "[a]n indorsement in blank specifies no particular indorsee and may consist of a mere signature. An instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone until specially indorsed." N.Y. U.C.C. Law § 3-204 (McKinney's 2014).

(*Id*. ¶ 24.) Plaintiffs contend that this response omitted the name of the Trust that purports to own their mortgage, and falsely represented that no single party owned the loan. (*Id*. ¶ 26.) According to plaintiffs, Wells Fargo never identified the Trust as the purported owner of the mortgage until October 24, 2012, when it submitted a letter to the Court in connection with this litigation. (*Id.* ¶¶ 31–32; *see also* Doc. No. 10.)

In addition to the alleged misrepresentations in Wells Fargo's QWR responses, plaintiffs also allege that Wells Fargo fraudulently induced them to execute a loan modification agreement ("LMA") on or about March 23, 2011. (*Id*. ¶ 27.) The LMA identified Wells Fargo as the lender, increased the principal amount of the loan, and lengthened the loan's payment term to forty years.[7] (*Id*. ¶ 28.) Plaintiffs claim that this agreement caused them to "assume additional debt obligations to a party it did not owe money to." (*Id*.) Plaintiffs also allege that the LMA contains an Errors and Omissions Compliance Agreement ("EOCA"), which obligates plaintiffs to "correct, or cooperate in the correction of, any clerical errors made in any document entered into in connection with the modification of th[e] Loan, if deemed necessary or desirable in the reasonable discretion of the Lender." (*Id.* ¶ 29.) According to plaintiffs, the EOCA violates New York State Banking Department Regulations, 3 N.Y.C.R.R. § 419.11(h), because it requires plaintiffs to waive rights or remedies as borrowers and to execute documents correcting chain of title issues. (Am. Compl. ¶ 30.)

Finally, plaintiffs also challenge the conveyance of their mortgage and note to the Trust. They allege that the Trust is a securitized trust treated as a Real Estate Mortgage Investment Conduit ("REMIC") for tax purposes, and governed by its Pooling and Service Agreement

---

[7] Plaintiffs did not append a copy of the LMA to their amended complaint, however, and no party submitted a copy as an exhibit to their motion papers.

("PSA").[8] (*Id.* ¶¶ 32–37.) Plaintiffs also maintain that, pursuant to the PSA, the Trust is governed by the laws of New York State. (*Id.* ¶ 38.) They further assert that under New York law, any act by a trustee that contravenes the trust documents is void, (*id.* ¶¶ 47–48), and any property imperfectly delivered to the trust fails to become trust property. (*Id.* ¶ 36.) That is exactly what plaintiffs allege happened here.

According to plaintiffs, the PSA requires that the "Depositor" (defined as Bank of America Funding Corporation) deliver or cause to be delivered to the Trustee, with respect to each assigned loan, "[t]he original Mortgage Note, endorsed by manual or facsimile signature" in a precise manner "without recourse," and "with all necessary intervening endorsements showing a complete chain of endorsement from the originator to the Trustee . . . ." (*Id.* ¶ 40 (quoting PSA § 2.01(b)(i).) Plaintiffs allege that defendants have never produced a copy of the original note containing such an endorsement, and therefore that the original note could not have been conveyed to the Trust. (*Id.* ¶¶ 41–42). Additionally, the PSA requires that the Trustee, within ninety days of the PSA's execution and delivery, "review the Mortgage Files in its possession and . . . deliver to the Depositor, [and] the Servicer . . . a certification . . . to the effect that, as to each Mortgage Loan . . . , such Mortgage File contains all of the items required to be delivered pursuant to Section 2.01." (PSA § 2.02; *see also* Am. Compl. ¶ 45.) Thus plaintiffs allege that even if the Trust *is* in possession of the original note, that possession is in violation of the PSA and New York law because acceptance of the note violated the terms of the PSA. (Am. Compl.

---

[8] Although plaintiffs did not include the PSA with their amended complaint, Wells Fargo appended an unsigned copy, dated July 31, 2006, to its motion papers. (*See* McGrath Decl, Ex. D ("PSA") (Doc. No. 28-6).) The Court may consider extrinsic documents to which the amended complaint "make[s] a clear, definite and substantial reference." *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003). Moreover, "[e]ven where a document is not incorporated by reference, the [C]ourt may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,'" such that it "renders the document 'integral' to the complaint." *Chambers*, 282 F.3d at 153 (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)); *see also Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 123 (S.D.N.Y. 2010).

¶¶ 46–51.) As such, plaintiffs contend that the Trust's assertions of ownership of their loan are "continuations of the ongoing fraud." (*Id*. ¶ 52.) In reliance on those assertions, plaintiffs allege that they have made mortgage payments "to parties with no legal right to collect . . . , while remaining legally liable to another [unspecified] entity," (*id*. ¶ 53), while defendants have been unjustly enriched. (*Id*. ¶ 54.)

## DISCUSSION

In order to survive a motion to dismiss, plaintiffs' amended complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the amended complaint need not contain "'detailed factual allegations,'" simple "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Rather, the amended complaint must include "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, which means "factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

### I. Standing

As an initial matter, the Court must determine whether plaintiffs have standing to bring this action. *See Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)); *Williams*, 2014 WL 1311154, at *2. "Article III standing is a fundamental constitutional requirement that prevents courts from unnecessarily reaching legal issues in situations where the party to the

litigation has failed to allege an injury which triggers an actual case or controversy that needs resolution by the courts." *Butler v. Obama*, 814 F. Supp. 2d 230, 235 (E.D.N.Y. 2011); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). Whether plaintiffs have standing is determined on the basis of the facts existing at the time the action was filed, *see United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980), and the Court "accept[s] as true all material allegations of the complaint" with respect to standing, "constru[ing] the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). To have standing, plaintiffs must show that (1) they have suffered an "injury in fact" that is both "concrete and particularized" and "actual and imminent, not conjectural or hypothetical"; (2) their injury is "fairly traceable" to defendants' actions; and (3) their injury would likely be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (citing *Lujan*, 504 U.S. at 560); *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 211 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2022 (2013).

In addition to these "constitutional limitations" on federal court jurisdiction, the standing inquiry also "involves . . . prudential limitations on its exercise." *Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 84 (2d Cir. 2014) (quoting *Warth*, 422 U.S. at 498). Prudential standing "encompasses the general prohibition on a litigant's raising another person's legal rights." *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 91 (2d Cir. 2009) (quoting *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004)). In other words, a plaintiff "generally must assert his [or her] own legal rights and interests, and cannot rest his [or her] claim to relief on the legal rights or interests of third parties." *Rajamin*, 757 F.3d at 86 (quoting *Warth*, 422 U.S. at 499). Moreover, because the Court "must assure itself of its jurisdiction," it may address the

issue of standing *sua sponte*. *See Youth Alive v. Hauppauge Sch. Dist.*, No. 08-CV-1068 (NGG) (VMS), 2012 WL 4891561, at *2 (E.D.N.Y. Oct. 15, 2012).

At bottom, standing simply seeks to ensure that "[a] litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth*, 422 U.S. at 498. Thus, "[i]n all standing inquiries, the critical question is whether [a] plaintiff has 'alleged such a personal stake in the outcome of the controversy as to warrant his [or her] invocation of federal-court jurisdiction.'" *Prestige Builder & Mgmt. LLC v. Safeco Ins. Co. of Am.*, 896 F. Supp. 2d 198, 202 (E.D.N.Y. 2012) (quoting *Horne v. Flores*, 557 U.S. 433, 445 (2009)) (internal alterations omitted). Plaintiffs have standing to bring their claims for fraud and unjust enrichment, because they have alleged fraudulent conduct that caused them personally to be injured.

They lack standing, however, to assert a quiet title claim.[9] First, they lack constitutional standing because they fail to allege a sufficient injury in fact. Plaintiffs "acknowledge that they took out [the original loan] and were obligated to repay [it]," *Rajamin*, 757 F.3d at 85, and neither the assignment to Wells Fargo nor the conveyance to the Trust affected the plaintiffs' underlying debt or otherwise altered the terms of their loan. *See Boco v. Argent Mortgage Co, LLC*, No. 13-CV-1165 (DLI) (CLP), 2014 WL 1312101, at *3 (E.D.N.Y. Mar. 31, 2014); *Tamir v. Bank of New York Mellon*, No. 12-CV-4780 (DLI) (JO), 2013 WL 4522926, at *3 (E.D.N.Y.

---

[9] "New York has codified the common law action to quiet title and statutorily redefined the necessary elements for a well-pleaded remaining cloud on title complaint." *W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 196 (2d Cir. 1987); *accord Knox v. Countrywide Bank*, No. 13-CV-3789 (JFB) (WDW), 2014 WL 946635, at *9 (E.D.N.Y. Mar. 12, 2014). Under Article 15 of the New York Real Property Actions and Proceeding Law, a plaintiff must plead a "claim to an estate or interest in land and defendant's adverse claim." *Knox*, 2014 WL 946635, at *9. Notably, the plaintiff need not plead the invalidity of a defendant's claim to the estate or interest. *Id.* The statute also provides, however, that "nothing contained in [Article 15] shall be construed to limit any other remedy in law or equity." N.Y. Real Prop. & Proc. L. § 1551. "Thus, [p]laintiffs may choose to seek an equitable common law action to quiet title despite the existence of the . . . statute, or they may bring both claims." *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 417 (S.D.N.Y. 2010) (citing *Meyer v. Wilcox*, 136 N.Y.S. 337, 337 (N.Y. Sup. Ct. 1912)). Plaintiffs do not specify whether their quiet title claim is statutory or equitable in nature. But "[w]hether a quiet title action is commenced in equity or under . . . Article 15, the result is almost the same" because the Article 15 action 'has been described as a hybrid one in which the relief awarded is in large measure equitable in nature.'" *Barberan*, 706 F. Supp. 2d 408, 417 (S.D.N.Y. 2010) (quoting *Dowd v. Ahr*, 563 N.Y.S.2d 917, 919 (N.Y. App. Div. 1990), *rev'd on other grounds*, 583 N.E.2d 911 (N.Y. 1991)).

Aug. 27, 2013). Plaintiffs do not allege that they paid defendants more than the amounts due, that defendants (or any other lenders or loan servicers) dispute who owns the loan, or that any entity other than defendants has attempted to collect on the loan. *Cf. Rajamin*, 757 F.3d at 85; *Boco*, 2014 WL 1312101, at *3; *Tamir*, 2013 WL 4522926, at *3. In fact, plaintiffs' "impl[ication] that the loans are owned by some other entity or entities[] is highly implausible, for that would mean that since 200[5], there was no billing or other collection effort by" the loan's true owner. *Rajamin*, 757 F.3d at 85; *see also Tamir*, 2013 WL 4522926, at *3 (dismissing mortgagor's quiet title claim for failure to plead concrete and particularized injury).

Plaintiffs also fail to satisfy the prudential elements of standing. "The 'prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" *Rajamin*, 757 F.3d at 86 (quoting *Warth*, 422 U.S. at 509). Plaintiffs lack prudential standing here because they are not parties to, nor third-party beneficiaries of, the Assignment or the PSA.[10] *Cf. Rajamin*, 757 F.3d at 86 (affirming dismissal for lack of prudential standing); *Boco*, 2014 WL 1312101, at *3 (dismissing for lack of standing because plaintiff was not party to, or third-party beneficiary of, assignment and PSA); *Karamath v. U.S. Bank, N.A.*, No. 11-CV-1557 (NGG) (RML), 2012 WL 4327613, at *7 (E.D.N.Y. Aug. 29, 2012), *rep. and recommendation adopted*, 2012 WL 4327502 (E.D.N.Y. Sept. 20, 2012) ("[P]laintiff is not a party to the PSA or to the Assignment of Mortgage, and is not a third-party beneficiary of either, and therefore has no standing to challenge the validity of that agreement or the assignment."); *Tamir*, 2013 WL 4522926, at *3 ("Plaintiff is not a party to the mortgage assignment, nor is there language in the governing loan documents or other

---

[10] Plaintiffs also argue that pursuant to the New York Estates, Powers, and Trust Law, any conveyance to the Trust that fails to comply with the PSA's requirements is automatically void. But acts that violate a PSA are not automatically void under New York law. *See Rajamin*, 757 F.3d at 90 (observing that "under New York law such acts are voidable only at the instance of a trust beneficiary or a person acting in his behalf"). And even if it were true, plaintiffs still lack standing to make that argument. *See id.* at 88.

9

allegations suggesting that Plaintiff is a third-party beneficiary of that agreement."). Indeed, with respect to third-party beneficiary status, the PSA expressly provides to the contrary by stating that "[n]othing in this Agreement or in the Certificates, expressed or implied, shall give to any Person, other than the Certificateholders, the parties hereto and the NIMS Insurer and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under this Agreement." PSA § 11.11; *see also Anh Nguyet Tran v. Bank of New York*, No. 13-CV-580 (RPP), 2014 WL 1225575, at *6 (S.D.N.Y. Mar. 24, 2014) ("Plaintiffs bear the burden to plead facts showing their intended third-party beneficiary status.").

Because plaintiffs have failed to satisfy both the constitutional and prudential requirements of standing, they may not assert a quiet title claim.[11] *Cf. Rajamin*, 757 F.3d at 86; *Tamir*, 2013 WL 4522926, at *3; *Boco*, 2014 WL 1312101, at *3; *see also Utreras v. Aegis Funding Corp.*, No. 13-CV-291 (DLI) (LB), 2013 WL 789614, at *2 (E.D.N.Y. Mar. 1, 2013) ("[I]f one party purported to assign the mortgage to another party, but actually failed to do so, there could be a genuine dispute between the putative assignee and assignor over the ownership of the mortgage, but Plaintiff likely would have no standing in such a dispute"). Plaintiffs' claims as to fraud and unjust enrichment, however, survive. The Court considers those claims below, and begins with plaintiffs' claim for fraud.

---

[11] Wells Fargo also makes two additional arguments in support of dismissing this claim. First, it urges that "[t]here is no dispute regarding the title to the Property," because plaintiffs "know there is a Mortgage on the Property and know to whom to make their mortgage loan payments." (Def.'s Mem. at 5–6.) But "the fact that a plaintiff executed the mortgage which he [or she] now seeks to remove as a cloud on title does not deprive him [or her] of the right to maintain a quiet title action." *Barberan*, 706 F. Supp. 2d at 420 (internal quotation marks and alteration omitted). Second, Wells Fargo suggests that a purported mortgage lien is not an interest adverse to plaintiffs' interests. (Def.'s Reply Mem. of L. ("Def.'s Reply Mem.") (Doc. No. 28-14) at 2.) Other courts, however, have roundly rejected that argument as well. *See Knox*, 2014 WL 946635, at *9 (finding that plaintiffs-mortgagors stated quiet title claim against mortgagee); *Barberan*, 706 F. Supp. 2d at 418–19 (finding that plaintiffs stated plausible quiet title claim, whether statutory or equitable, where plaintiffs alleged that mortgage, note, and assignment were invalid).

**III. Fraud**

Common law fraud under New York law is generally defined as "a representation of fact, which is untrue and either known by [a] defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury." *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104–05 (2d Cir. 2001) (citing *Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 250 N.E.2d 214 (N.Y. 1969)). A claim for fraud in the inducement requires that a plaintiff allege: "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation . . . ; and (iv) resulting damages." *Silverman v. Household Finance Realty Corp. of New York*, 979 F. Supp. 2d 313, 320 (E.D.N.Y. 2013) (citing *Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011)); *see also Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 327 (S.D.N.Y. 2006) ("To state a claim for common law fraud in New York, a plaintiff must [allege] (1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) such reliance caused damage to the plaintiff.").

Additionally, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for claims brought in federal court and sounding in fraud, requiring that "the circumstances constituting fraud . . . be stated with particularity." Plaintiffs' allegations must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *see also Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43, 52 (E.D.N.Y. 1998) (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)) ("To comport with Rule 9(b), a plaintiff must not only

give the who, what, and when with regard to an alleged false or misleading statement, but also must 'give particulars as to the respect in which plaintiff contends the statements were fraudulent.'"). The particularity requirement under Rule 9(b) "applies to each element of a fraud claim, including causation," *Havana Club Holding, S.A. v. Galleon*, No. 96-CV-9655, 1998 WL 150983, at *3 (S.D.N.Y. Mar. 31, 1990), and "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Di Vittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

In connection with their fraud claim, plaintiffs allege as follows. On December 27, 2010, Wells Fargo, intending to induce plaintiffs to believe that the Trust owned their loan, stated in its first QWR response that Bank of America was the investor in plaintiffs' mortgage when, in fact, the purported conveyance of plaintiffs' loan to the Trust was void for failure to comply with the PSA's requirements. On March 23, 2011, Wells Fargo fraudulently induced plaintiffs to enter into the LMA. Wells Fargo continued the fraud in its second QWR response on April 8, 2011, by neglecting to state the Trust's identity. And on March 1, 2012, Wells Fargo continued the fraud by falsely stating, in its third QWR response, that no single party owned the loan, and by omitting the name of the Trust. Based on these fraudulent misrepresentations – as well as the Trust's continuing assertion that it owns plaintiffs' loan even though the loan allegedly was not validly conveyed to the Trust – plaintiffs allege that they have made mortgage payments to parties with no legal right to collect while remaining legally liable to another, unspecified entity.

These allegations are insufficient to plead a claim for fraud. First, as explained above, plaintiffs do not adequately allege that they have sustained any injury as a result of defendants' purported fraud. *Cf. Honig*, 2013 N.Y. Slip Op. 51189(U), at *3; *Boco*, 2014 WL 1312101, at

*5; *Tamir*, 2013 WL 4522926, at *3. This deficiency alone causes plaintiffs' claim to fail. Nor do plaintiffs allege a single fraudulent statement made by the Trust or Trustee, let alone where, when, or by whom such a statement was made. Moreover, although plaintiffs identify several statements made by Wells Fargo that they claim were fraudulent, nowhere in the amended complaint is there any indication why those statements were material to inducing plaintiffs' reliance. And to the extent that plaintiffs allege fraud in connection with the execution of the LMA, they fail even to specify the allegedly fraudulent statements made by Wells Fargo that induced them to enter into the agreement. As such, plaintiffs' allegations of fraud fail to surmount the heightened pleading standard imposed by Federal Rule of Civil Procedure 9(b). *See Innovation Ventures, LLC v. Ultimate One Distributing Corp.*, No. 12-CV-5354 (KAM) (RLM), 2014 WL 1311979, at *6–7 (E.D.N.Y. Mar. 28, 2014); *Stair v. Calhoun*, No. 07-CV-3906 (JFB) (ETB), 2009 WL 792189 (E.D.N.Y. Mar. 23, 2009).

## IV. Unjust Enrichment

Finally, the Court turns to plaintiffs' claim for unjust enrichment. To state a claim for unjust enrichment, a plaintiff must allege "that the defendant benefitted at the plaintiff's expense and that 'equity and good conscience' require restitution." *Shpak v. Curtis*, No. 10-CV-1818 (RRM) (JO), 2011 WL 4460605, at *16 (E.D.N.Y. Sept. 26, 2011) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). This claim fails for two reasons.

First, as discussed above, plaintiffs have failed adequately to allege that the original mortgage or the LMA is invalid. Under New York law, a plaintiff may not recover for unjust enrichment where a valid contract exists. *See Linares v. Richards*, No. 08-CV-3243 (RRM) (RLM), 2009 WL 2386083, at *5 (E.D.N.Y. Aug. 3, 2009); *Tobin v. Gluck*, No. 07-CV-1605 (MKB), 2014 WL 1310347, at *11 (E.D.N.Y. Mar. 28, 2014). Second, since plaintiffs do not

13

dispute the fact that they remain liable for their mortgage debt, they have failed to allege an injury for which equity and good conscience require restitution. *Cf. Honig*, 2013 N.Y. Slip Op. 51189(U), at *3 (dismissing an unjust enrichment claim because plaintiffs did not dispute the underlying debt); *Boco*, 2014 WL 1312101, at *6 (dismissing an unjust enrichment claim because the plaintiff "remain[ed] obligated to make loan payments under the terms of the note, and no actual, as opposed to hypothetical, threat of double recovery [wa]s alleged"); *Tamir*, 2013 WL 4522926, at *5 (same); *see also Rajamin v. Deutsche Bank Nat'l Trust Co.*, No. 10-CV-7531 (LTS), 2013 WL 1285160, at *3 (S.D.N.Y. Mar. 28, 2013), *aff'd*, 757 F.3d 79 (2d Cir. 2014).

## CONCLUSION

For the foregoing reasons, plaintiffs' allegations in the amended complaint fail to state a claim for which relief can be granted. Accordingly, Wells Fargo's motion to dismiss the amended complaint, (Doc. No. 28), is granted.

The Clerk of Court is directed to enter judgment accordingly, and close this case.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
September 22, 2014

_____
ROSLYNN R. MAUSKOPF
United States District Judge